**Le Roy PETERSON d/b/a Stennett Elevator, Appellee,**

v.

**Ermal EITZEN, Appellant.**

No. 53807.

Supreme Court of Iowa.

Jan. 13, 1970.

Davidson & Hemphill, Clarinda, for appellant.

Porter, Heithoff, Pratt & Reilly, Council Bluffs, for appellee.

BECKER, Justice.

Defendant filed a motion, under rule 252, Iowa Rules of Civil Procedure, to vacate a default judgment taken against him on November 8, 1968 and filed on November 14, 1968. The judgment was rendered on three divisions of the petition for $8607, $4360 and $1296 or a total of $14,263, plus interest from varying dates. After hearing on the motion, the trial court refused to vacate the judgment. Defendant appeals. We affirm.

I. The facts giving rise to the difficult situation now facing this court began well before the present action began. Two lawsuits involving the same parties and the same issues are involved.

The first action No. 15175, was initiated by service of original notice upon defendant on March 15, 1968. The notice stated a petition "is" on file but no petition had, in fact, been filed. On March 28, 1968, defendant's then attorney filed motion to dismiss No. 15175 under rule 55, R.C.P. and attached the original notice to the petition. Order of dismissal was duly entered on March 28, 1968.

In Credit Industrial Corp. v. Miller, 255 Iowa 1022, 125 N.W.2d 142, we held a dismissal under rule 55, R.C.P., which does not provide the dismissal is not on the merits, constitutes an adjudication on the merits. Such was the situation when the dismissal under rule 55 was signed by the court.

However, on the following day plaintiff's attorney presented a nunc pro tunc order which was signed by the judge without notice to defendant or hearing thereon. The order, filed April 1, 1968, provided the dismissal signed the day before was without prejudice.[1] On April 3, 1968, defendant challenged this nunc pro tunc order by notice of appeal to this court. But defendant did no more to process his appeal and it was dismissed. Procedendo dismissing the appeal reached the district court September 10, 1968.

As will be noted, the trial court subsequently treated the March 28, 1968 dismissal and the nunc pro tunc addition as a valid, binding order which did not make the dismissal res adjudicata and allowed plaintiff to start a new action.

II. Defendant does not attack the validity of judgment of dismissal, but the nunc pro tunc portion thereof is questioned. We first consider whether the trial court, in the first instance, had jurisdiction of the

---

1. "Now on this 29th day of March, 1968, the Court has before it the Order signed and filed March 28, 1968 dismissing plaintiff's Petition and after reviewing said Order finds that nothing was said as to whether Dismissal was based upon the merits of the controversy. The Court's intention was not, to dismiss plaintiff's Petition on its merits and that any Dismissal ordered herein should be without prejudice and not res judicata.

"IT IS THEREFORE ORDERED that the plaintiff's Petition was dismissed without prejudice."

parties and the subject matter to enter the nunc pro tunc order. We hold it had such jurisdiction.

■ The initial dismissal order under rule 55, R.C.P., was clearly within the jurisdiction of the court. Sioux County v. Kosters, 194 Iowa 1300, 191 N.W. 315. The rules governing power of the court to enter nunc pro tunc orders after it has acquired initial jurisdiction of the parties and subject matter are well established in Concannon v. Blackman, 232 Iowa 722, 728, 6 N.W.2d 116, 119: "The court has broad power, after proper notice to interested parties, to change, modify or amend entries upon its records made at the same term. Code, section 10801. Ryan v. Phoenix Ins. Co., 204 Iowa 655, 657, 215 N.W. 749, and cases cited; Miller v. Bryson, 171 Iowa 354, 361, 152 N.W. 568. This power was recognized at common law and inheres in the court aside from the statute. Hallam v. Finch, 197 Iowa 224, 226, 195 N.W. 352; Todhunter v. DeGraff, 164 Iowa 567, 575, 146 N.W. 66; 31 Am.Jur. 272, sec. 727; 34 C.J. 207, sec. 436."

Since we have abolished terms of court in this state, the broad statutory power to act "within the term" has been transferred to like power to act within 60 days.[2]

We need not concern ourselves with the power of the court to enter nunc pro tunc after 60 days but see recent discussions in Headley v. Headley, Iowa, 172 N.W.2d 104 (opinion filed November 12, 1969) and Ash v. Ash, Iowa, 172 N.W.2d 801 (opinion filed December 9, 1969).

■ At this point we note Sido v. Sido, 242 Iowa 950, 957, 48 N.W.2d 799, 803: "* * * No notice is required of any correction or change in a judgment if made at the term (now before 60 days) and before recording. * * *." We conclude, on the record before us, the court had

jurisdiction to enter the nunc pro tunc order. Whether such order might have been set aside upon direct appeal for nonjurisdictional reasons does not concern us because the appeal was not prosecuted.

■ III. When this court issued procedendo dismissing the appeal in the first action, the judgment of the trial court stood as a verity, "as if it never appealed from". In re Estate of Lyman, 227 Iowa 1191, 1194, 290 N.W. 537. The judgment of the trial court is res adjudicata until set aside, modified or reversed. Shaw v. Addison, 236 Iowa 720, 726, 18 N.W.2d 796.

■ IV. Of course, if the judgment is void for want of jurisdiction of the parties or subject matter, it is subject to collateral attack and will be disregarded. Halverson v. Hageman, 249 Iowa 1381, 92 N.W.2d 569. We have already held the court had the requisite jurisdiction.

■ A judgment may also be held to be void because of extrinsic fraud in procurement. This is usually done by direct attack in the same action or by equity action to set the judgment aside. The latter action has also been characterized as a direct attack. City of Chariton v. J. C. Blunk Constr. Co., 253 Iowa 805, 112 N.W. 2d 829. But we are considering a motion under rule 252, R.C.P. This is not a direct attack on the judgment. It is a collateral attack on the nunc pro tunc order and falls within the definition of collateral attack found in Reimers v. McElree, 238 Iowa 791, 795, 28 N.W.2d 569, 571: " ' * * * an attack made by or in an action or proceeding that has an independent purpose other than the impeaching or overturning of the judgment, although impeaching or overturning the judgment may be necessary to the success of the action.' " The nunc pro tunc order was therefore not subject to collateral attack and the trial court was correct in treating it as a verity.

2. Former section 10801, now section 604.41 reads: "The record of any court proceedings is under the control of the court and may be amended or any entry therein expunged before it has been signed by the judge or within sixty days thereafter."

V. It has been necessary to review the foregoing principles and the status of the nunc pro tunc order in No. 15175 in order to adequately discuss what happened in this subsequent case No. 15205, involving the same parties, the same issues and same subject matter.

This case was commenced by service of original notice on July 16, 1968 (some 109 days after notice of appeal in the former case had been filed but while the appeal was still pending). Notice was served by substituted service on defendant's wife. On August 2, 1968 defendant filed special appearance alleging the same cause, under former action 15175, was on appeal to the Iowa Supreme Court. On September 26, 1968 after the appeal of the former case had been dismissed, the trial court overruled the special appearance in the instant case. The court gave defendant 15 days to answer.

No answer or responsive pleading was filed and on November 8, 1968 a default decree was presented to the court and signed by it. This decree was filed November 14, 1968, together with plaintiff's affidavit under rule 232, R.C.P. stating the items in the Bill of Particulars are a correct statement of account. On November 21, 1968 general execution, aided by garnishment of defendant's bank account, was issued.

On November 25, 1968, defendant moved to set aside the judgment on grounds a prior judgment involving the same parties and subject matter had been entered March 28, 1968 and the nunc pro tunc order was void. This motion was overruled on February 17, 1969 on grounds such matters had been alleged in the Special Appearance and determined adversely to defendant.

On February 17, 1969, defendant appeared by new attorney and filed motion to vacate judgment under rule 252, R.C.P. It is the ruling on this motion that defendant appeals. Defendant relies on three of the six permissible grounds for vacation of judgment under rule 252; i. e., mistake or omission by the clerk, irregularity or fraud practiced in obtaining judgment and material evidence, newly discovered, which could not have been obtained with reasonable diligence for trial.

■ VI. The mistake of the clerk is due to failure of the clerk to notify defendant of the default judgment in accordance with rule 233, R.C.P.[3] The notice can only be for the purpose of allowing the defendant to timely move to set the judgment aside. Here defendant made timely motion so failure to receive notice of the default occasioned no prejudice. By its terms the rule does not affect the validity of the judgment. Except as to timing, it cannot affect the issues on motion to set the judgment aside under rule 236 or to vacate under rule 252. Those motions must rise or fall on their own merits.

VII. Defendant urges the judgment should be set aside because of irregularity or fraud practiced in obtaining the same. This argument has two facets. The first relates to the irregularity in procuring the nunc pro tunc order and has heretofore been decided. Whatever vitality this irregularity or fraud had was lost when the first appeal was abandoned. The second argument goes to failure to file plaintiff's affidavit under rule 232, R.C.P. at the time, or before, judgment by default was entered.

The record as certified to us shows the judgment was signed November 8, 1968 but not filed until November 14, 1968. An affidavit stating the facts alleged in the petition are true and the items set forth

---

3. "233. Notice—notice of default in certain cases. When any judgment other than one in rem has been taken by default against a party served with notice delivered to another person as provided in rule 56 "a", the clerk shall immediately give written notice thereof, by ordinary mail to such party at his last known address, or the address where such was had. The clerk shall make a record of such mailing. Failure to give such notice shall not invalidate the judgment."

in the Bill of Particulars are a correct statement of account with defendant, was signed and sworn to on October 31, 1968 but not filed until November 14, 1968. Defendant argues this bare record indicates a violation of rule 232, R.C.P. The rule allows the clerk, where the sum is certain, or can be made certain on computation, to enter judgment "upon affidavit that the amount is due". This section was not utilized. Rule 232(b) provides for the judge to enter judgment under certain circumstances.[4] While the statute undoubtedly contemplates the judge shall satisfy himself of the correctness of the account by affidavit or by evidence produced in support of the demanded judgment, it does not require an affidavit as such.

■ Here there is no showing the required affidavit was not presented to the court at the time the judgment was signed. Both documents, affidavit and judgment, were filed on the same date but substantially after their respective execution. The record does not show who had physical possession of the documents after execution and before filing but it does indicate plaintiff filed the affidavit and the court filed the judgment. This alone is not sufficient to overcome the presumption of regularity accorded the court's action. Nor is it sufficient for us to say the court abused its sound discretion in rejecting the argument as a basis for vacating the default judgment.

In Claeys v. Moldenschardt, 260 Iowa 36, 148 N.W.2d 479, 485; we again said: " * * * We have several times held trial court, in passing upon a motion under rules 252 and 253, have considerable discretion, and it is not for us to interfere unless abuse is shown."

■ VIII. This brings us to the claim of newly discovered evidence. While defendant showed enough at the hearing held on the motion to vacate to justify a finding he might well have a good defense, at least as to amount, he failed to show any evidence that could be denominated "newly discovered". The evidence was all based on documents and understandings in possession of defendant and his wife or his attorney during the entire course of the litigation. What was newly discovered was the detail of the Bill of Particulars as compared to defendant's evidence. These documents had been in the hands of defendant's attorney since the inception of the lawsuit.

A troublesome argument is raised in connection with this facet of the case. The record reflects a consistent position by defendant and his first attorney which would have avoided trial on the merits to plaintiff's detriment.[5] Defendant now seeks to

---

4. "232. Judgment on default. Judgment upon a default shall be rendered as follows:
    "(a) Where the claim is for a sum certain, or which by computation, can be made certain, the clerk, upon request, shall make such computation as may be necessary, and upon affidavit that the amount is due shall enter judgment for that amount, and costs against the party in default.
    "(b) In all cases the court on request of the prevailing party shall order the judgment to which he is entitled, and the clerk shall enter the judgment so ordered. If no judge is holding court in the county, such order may be made by a judge anywhere in the judicial district as provided in rule 120. The court may, and on demand of any party not in default shall, either hear any evidence or accounting required to warrant the judgment or refer it to a master, or submit it to a jury if proper demand has been made therefor under rule 177. [Report 1943]
    "See rules 13, 14, 17 and 71 as to hearings on default against incompetents, prisoners, etc., and guardians ad litem therein.
    "See rules 46 and 47 as to required hearing in defaulted class suit."

5. In considering motions to set aside default under rule 236 (not involved here) considerable weight has been given to whether the litigant evidence an intention to appear and defend. Hobbs v. Martin Marietta Co., 257 Iowa 124, 131 N.W.2d 772; Haynes v. Ruhoff, Iowa, 157 N.W.2d 914.

avoid the consequences of such strategy by stating he, as litigant, did not understand the full import of the maneuvering though he asked his lawyer about it many times. He now argues he should be allowed to try his lawsuit on the merits and both he and his lawyer are willing and anxious to do so.

We do not condone the action of defendant's first attorney in refusing to file answer or other responsive pleading when the special appearance was overruled. He must have known the matter would be pursued to judgment. Nor do we condone the first lawyer's failure to file motion under rule 236, R.C.P. when it would have been easier to show "mistake, inadvertence, surprise, excusable neglect, or unavoidable casualty". Such a motion might or might not have been successful but the burden on defendant would have been less under rule 236 than it is now under rule 252. See Windus v. Great Plains Gas, 255 Iowa 587, 122 N.W.2d 901, 905. Even at such late date defendant and his then attorney did not ask the default be set aside and a trial ordered, but rather demanded the judgment be set aside and the case dismissed.

Our review of defendant's actions through his first attorney does not enable us to reverse the trial court here. In Newell v. Tweed, 241 Iowa 90, 96, 40 N. W.2d 20, 24, default was taken against defendant because his attorney misplaced the original notice and the matter did not properly reach the attorney in the firm who was to take care of the matter. On motion made within 60 days to set aside the default judgment on grounds of excusable oversight, inadvertence and honest mistake, the trial court exercised its discretion and set the default aside. This court affirmed and in doing so said: " * * * The statement made by this court in Hatt v. McCurdy, 223 Iowa 974, 986, 274 N.W. 72, 78, is applicable to the instant case. We there stated: ' * * * In any event, the record satisfies us that the appellants themselves were guilty of no negligence whatever. They had employed reputable counsel to protect their

interests, and whatever may have been the true inwardness of the fact situation, they, at least, were not to blame. We hold they should "have had their day in court," * * *.' "

Hatt v. McCurdy, 223 Iowa 974, 986, 274 N.W. 72, was also a case based on motion to set aside a default. There the trial court refused to set the default aside and was reversed. Neither of the above cases involves motion to vacate judgment under rule 252, R.C.P. Both are interesting insofar as they distinguish the fault of the attorney from the fault of the client but each case involves inadvertence and neglect, not a deliberate course of conduct calculated to refuse to plead or answer. Two lengthy annotations on the general subject are noted: Abandonment of or withdrawal from the case by attorney as ground for opening or setting aside judgment by default, 114 A.L.R. 279 and Opening default or default judgment claimed to have been obtained because of attorney's mistake as to time or place of appearance, trial, or filing of necessary papers, 21 A.L.R.3d 1255.

We have examined those annotations and many of the cited authorities with care. Many cases state the consequences of neglect or inadvertence of the attorney should not be visited on the party litigant. Many others state otherwise. Each is decided on its own peculiar fact situation. But none of the cases noted allows the party litigant to escape the consequences of a long continued position, or litigation strategy, espoused for him by his attorney.

We have often stated our strong preference for determination of cases on their merits. This preference has caused us to closely examine the facts and law upon which the trial court's refusal to vacate judgment is based. After careful consideration of the entire matter, we cannot say the trial court abused its discretion.

Affirmed. ·

All Justices concur.